# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### (MILWAUKEE DIVISION)

| | | |
|---|---|---|
| TODD AND MARIA FORSTER, | ) | |
| on behalf of themselves and all others | ) | MDL No.  2:16-md- 2688 |
| | ) | (W.D. N.Y. Case No. 1:16-cv-257) |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS'** |
| | ) | **MEMORANDUM OF LAW** |
| v. | ) | **IN SUPPORT OF THEIR** |
| | ) | **MOTION TO DISMISS COMPLAINT** |
| WINDSOR WINDOW COMPANY d/b/a | ) | |
| WINDSOR WINDOWS AND DOORS, | ) | |
| and WOODGRAIN MILLWORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>INTRODUCTION</u>

Fifteen years ago, windows manufactured by Defendant Windsor Window Company were installed in Plaintiffs' New York home. Twelve years ago, Plaintiffs made a warranty claim about a leak, and Windsor replaced the allegedly leaky window(s). And ten years ago, Plaintiffs again noticed alleged leaking, which their contractor repaired before Windsor inspected it.

The parties have not communicated since then, a decade ago.

Plaintiffs' five claims (two warranty claims and three tort claims, two sounding in fraud) must all be dismissed, because they are time barred, barred by the economic loss doctrine, and are insufficiently pled under Fed. R. Civ. P. 8 and 9(b). Unfortunately, this is no surprise. The present Complaint is little more than the meager fruit of the plaintiff-side class action bar's

nearly two year old[1], and seven website strong[2], campaign to drum up lawsuits against Windsor. And in light of its numerous legal failings, this particular Complaint—filed second to last of those in this MDL—appears to have been filed solely to help lend thin support to the notion that an MDL is appropriate, to address the claims of some groundswell of homeowners (which does not exist) who seek to sue Windsor over an alleged common window defect (which has never been identified and which does not exist). Indeed, apparently to create that illusion before being subjected to Rule 12 scrutiny, this particular case was strategically filed just *two days* before the Judicial Panel on Multidistrict Litigation heard oral arguments on whether to order an MDL.

But the time to subject this case to Rule 12 scrutiny has now arrived, and for the numerous, independently dispositive reasons set forth within, all five Counts must be dismissed.

## **FACTS**[3]

The plaintiffs are Todd and Maria Forster. In 2001, they began construction of a house in Colden, New York. Doc. 1, Compl. ¶ 74. In or around June 2001, Pinnacle windows

---

[1] *See, e.g.*, http://www.yourlawyer.com/topics/overview/pinnacle-select-windows, *last accessed on* May 19, 2016 (soliciting plaintiffs since at least June 4, 2014); Seeger Weiss LLP, "Windsor Pinnacle Select Windows Under Investigation for Faulty Seals and Water Damage" (article dated Oct. 6, 2014), *located at* http://www.seegerweiss.com/news/windsor_pinnacle_select_windows_under_investigation_for_faulty_seals_and_water_damage, *last accessed on* May 19, 2016.

[2] (1) Audet & Partners LLP, http://audetlaw.com/investigations/windsor-pinnacle-select-windows-lawsuit-investigation/, *last accessed on* May 19, 2016; (2) Baillon Thome, https://www.baillonthome.com/cases/pinnaclewindows, *last accessed on* May 19, 2016; (3) ClassAction.org, http://www.classaction.org/windsor-windows, *last accessed on* January 8, 2016; (4) Class Action Lawsuits Center, http://classactionlawsuitcenter.com/headlines-view/windsor-pinnacle-select-windows-class-action-lawsuit/, *last accessed on* January 8, 2016; (5) Morgan & Morgan, http://www.forthepeople.com/class-action-lawyers/windsor-windows-lawsuit/, *last accessed on* May 19, 2016; (6) Parker Waichman LLP, http://www.yourlawyer.com/topics/overview/pinnacle-select-windows, *last accessed on* May 19, 2016; (7) Seeger Weiss LLP, http://www.seegerweiss.com/news/windsor_pinnacle_select_windows_under_investigation_for_faulty_seals_and_water_damage, *last accessed on* May 19, 2016.

[3] In accordance with the standard of review, Defendants recite the facts in the light most favorable to the Complaint. But Defendants do not concede their truth, and reserve the right to later challenge their veracity.

manufactured by Defendant Windsor[4] "were purchased and installed." *Id.* The Forsters simply bought the house; their contractor apparently purchased the windows. *See id.* ¶¶ 74-77 ("The Forsters constructed and paid for the home containing Defendants' windows based upon the representations of the contractor . . . ."). They moved into the home in October 2001. *Id.* ¶ 74.

The warranty applicable to the Forsters' windows provides:[5]

Windsor Window Company, as manufacturer, warrants that all Windsor Series windows and patio doors will be free from defects in materials and workmanship which significantly impair their operation and proper usage, subject to conditions below, as follows:

. . . .

### ALL OTHER COMPONENTS – 5 YEARS

Windsor warrants these items to be free from defects, under normal conditions, for a period of **5 YEARS** from the date of manufacture. Windsor will provide replacement parts, free of charge, during the warranty period.

. . . .

### LIMITS OF LIABILITY
**THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED . . . .**
No distributor, dealer, employee, salesperson, or representative of Windsor has any authority to change or modify this warranty in any way.

---

[4] In their Complaint, the Forsters blur a critical distinction between Defendant Windsor, which manufactures and sells windows, and Defendant Woodgrain, which plays no role in that process. Defendants' joint motion to dismiss does not ask this Court to resolve this dispute at this stage. But Defendants reserve the right to correct this mistaken characterization in later litigation. For purposes of this motion, the claims against Woodgrain must be dismissed for the same reasons the claims against Windsor must be dismissed.

[5] The warranty is attached to the accompanying McMillen Declaration. *See* Decl. of Rick McMillen, May 26, 2016, Exhibit A. This Court may consider the warranty because it is referred to by the Complaint and is central to the Forsters' warranty claims. *See Ball v. Sony Electronics Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *1 (W.D. Wis. Sept. 28, 2005) ("Although the warranty itself was not appended to the complaint, it is properly considered part of the pleadings because the warranty is referred to in the plaintiffs' complaint and is central to their claims."); *Hongbo Han v. United Contl Holdings, Inc.*, 762 F.3d 598, 603 n.1 (7th Cir. 2014) ("The plaintiff attached the MileagePlus contract in response to the motion to dismiss. Because the terms of the MileagePlus contract are central to Han's complaint, we may consider them in ruling on a motion to dismiss."). Moreover, "[t]o the extent that the contracts contradict the Complaint, the contracts trump the facts or allegations presented in the Complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007).

Windsor is not liable for any consequential, incidental or punitive damages, costs of installation of replacement or costs of refinishing of window or door components or adjacent parts/millwork.

. . . .

Windsor, at its sole discretion, may repair or replace the defective part or product or refund the original purchase price.

. . . .

This warranty is governed by the laws of the State of Iowa without regard to choice of law principles.

**CLAIMS PROCEDURE**

. . . .

You must notify Windsor, or your local authorized independent Windsor distributor of any defects within a reasonable period, but no later than 30 days after the defect is discovered or should have been discovered.

Decl. of Rick McMillen, May 26, 2016, Exhibit A.

In 2004, the Forsters discovered a window leak "at ganged windows" and "replaced these windows under the Defendants' warranty." Compl. ¶ 81. In 2006, they discovered additional leaking, which their contractor repaired. *Id.* ¶ 83. After that repair, a "representative" of Defendants inspected the windows and told the Forsters "that the Windows themselves were not leaking and that the water intrusion must be due to installation errors or condensation." *Id.* at ¶¶ 83-84. The Forsters never contacted Defendants again, and they discovered no further leaking for (at least) nine years. *See id.* ¶ 87. In 2015, they discovered additional leaking, which they believed was caused by the same alleged defect that was at issue in 2006, but they "did not put Defendants on notice" of this belief, and "instead filed the instant action." *Id.* ¶¶ 87, 91.

About a decade has passed since the Forsters last contacted Windsor in 2006. After the events of 2006, Windsor did not hear from them again until it was notified that, on March 29,

2016, the Forsters filed this lawsuit—just two days before the Judicial Panel on Multidistrict Litigation heard oral arguments on whether to order the current MDL. The Forsters allege five Counts: breach of express warranty (Count I), breach of contract (Count II), fraudulent misrepresentation (Count III), fraudulent concealment (Count IV), and strict liability (Count V).

This motion to dismiss all Counts follows.

## ARGUMENT

### I.      Standard of Review

"[T]he motion to dismiss for failure to state a claim" is an "important mechanism for weeding out meritless claims," *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471, (2014), which is intended to "streamline[] litigation by dispensing with needless discovery and factfinding," *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). It "requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." *Id.* To do so, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### II.     The strict liability claim (Count V) must be dismissed because it is barred by the three year statute of limitations and the economic loss rule.

#### A.  Three Year Statute of Limitations

1.   **The three year statute of limitations bars the strict liability claim, which accrued, at the latest, by 2006, and expired in 2009, long before this 2016 action.**

Under New York law, the three year statute of limitations in N.Y. C.P.L.R. § 214, subds. 4-5, applies to strict liability claims. *Victorson v. Bock Laundry Mach. Co.*, 335 N.E.2d 275, 276 (N.Y. 1975). That limitations period "begins to run at *the date of injury*." *Id.* (emphasis added). This is a specific application of New York's general rule that a tort action accrues on the date when "an injury is sustained," "rather than . . . discovery of the injury by plaintiff." *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 291-92 (N.Y. 1993); *see Crist v. Adduci*, No. 87 CIV. 5714 (KC), 1988 WL 48681, at *2 (S.D.N.Y. May 10, 1988) (discussing N.Y. C.P.L.R. § 214, subd. 4: "The statute of limitations begins to run on the date of injury, not the date of its discovery.").

Under that date-of-injury rule, the Forsters' strict liability claim expired, at the latest, in 2009. They allege that they first discovered an alleged window leak in 2004, and then more leaks in 2006. Compl. ¶¶ 81, 83. They also allege discovering window "fogging" in 2015. Compl. ¶ 87. But they allege that this alleged fogging arose from the *same defect* that they allege existed in 2006. Compl. ¶¶ 78-80, 91-93 (equating alleged defect from 2006 with alleged defect on which the Forsters base this lawsuit). Thus, under a "straightforward application" of the date-of-injury rule, the Forsters' claim accrued no later than 2006 because "plaintiffs' cause of action accrued on the date they were *first* injured." *Snyder v. Town Insulation, Inc.*, 615 N.E.2d 999, 1001 (N.Y. 1993) (emphasis added). Indeed, in New York, "[i]t is a settled principle that once a compensable injury has occurred, the time within which an action may be commenced may not be extended merely by the aggravation, or exacerbation, of that injury by continued contact with the same offending product." *Coughlin v. Int'l Bus. Machines Corp.*, 650 N.Y.S.2d 477, 480 (App. Div. 3rd Dept. 1996) (collecting cases, including *Seven-Up*, discussed below)

*Seven-Up*, which dealt with the accrual of a strict liability claim against the manufacturer of allegedly defective roofing insulation, is instructive here:

> The record in the instant case shows that if the styrofoam insulation in fact caused splits in the roof membrane, it first did so no later than 1972. At that point, plaintiff's cause of action against Dow accrued. The subsequent cracks in the roof membrane did not give rise to new causes of action. Plaintiff has not alleged a continuing tort or torts. Here, there was one tortious act complained of, namely, the marketing of an allegedly defective product. The cause of action accrued when the product first injured plaintiff, and the accrual date does not change as a result of continuing consequential damages.

*New York Seven-Up Bottling Co. v. Dow Chem. Co.*, 96 A.D.2d 1051, 1052, 466 N.Y.S.2d 478 (2nd Dept. 1983), *aff'd,* 462 N.E.2d 150 (N.Y. 1984). Likewise, the Forsters alleged one tortious act: "the marketing of [] allegedly defective [windows]." *See id.* They allege that the windows first leaked by 2004, and again in 2006. Compl. ¶¶ 81, 83. "The cause of action accrued when the [windows] first [allegedly] injured [the Forsters], and the accrual date does not change as a result of [alleged] continuing consequential damages." *See Seven-Up*, 96 A.D. at 1052; *see also Town of Oyster Bay v. Lizza Indus., Inc.*, 4 N.E.3d 944, 949 (N.Y. 2013) (concluding that claim was time barred: "Although plaintiffs allege that the injuries to their property are ongoing, defendants' tortious conduct consisted of discrete acts (i.e., negligent excavation and backfilling) that ceased upon completion of the sewer construction over 20 years ago.").

### 2. The Forsters have not pled a plausible factual basis for equitable estoppel.

Apparently aware that their claims are time barred, the Forsters try to avoid the statute of limitations by alleging that Defendants are equitably estopped from asserting the statute of limitations. The Forsters' estoppel argument is riddled with fatal flaws.

"[E]quitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (quotation omitted).

> Under New York law, the elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other

party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position.

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 607 (2d Cir. 2005) (quotation omitted).

The Forsters allege only two contacts with Windsor, which do not satisfy the elements of estoppel, nor do they reveal circumstances that are rare in exceptional.

In the first contact (2004), Windsor promptly complied with its warranty by replacing allegedly leaking windows. Compl. ¶ 81. Complying with a warranty cannot be "conduct which amounts to a false representation." *See Aetna*, 404 F.3d at 607. In the second (2006), an unidentified person allegedly affiliated with Windsor stated that the warranty did not apply because a cause other than a window defect had caused the leaking. *Id.* ¶¶ 83-84. But apart from conclusory assertions, the Forsters provide no *factual* allegation indicating that that representation was "false." *See Aetna*, 404 F.3d at 607. And even if it was false (it was not), the Forsters ceased to "lack knowledge of the true facts" (*Aetna*, 404 F.3d at 607) the following year when, in 2007, they paid more than $15,000 for an invasive investigation of the alleged water intrusion, involving the removal of the brick veneer that surrounded the windows. *See id.* ¶ 86. At that point, any tolling would have ceased, meaning that the three year statute of limitations would have expired by 2010. And tellingly, the Forsters never contacted Windsor again.

Perhaps the most fundamental problem with the Forsters' equitable estoppel theory is their reliance on their assertion that Defendants prevented them from *discovering their cause of action*. What they fail to realize is that equitable estoppel applies *only* if a plaintiff *has already discovered her cause of action*, but then is prevented by a defendant from suing. *Compare* Compl. ¶ 103 (arguing that Forsters "did not discover the defect"), *with Marshall v. Hyundai*

*Motor Am.*, 51 F. Supp. 3d 451, 462-63 (S.D.N.Y. 2014) (discussing New York law and stating, "Equitable estoppel, on the other hand, permits the tolling of the statute of limitations in extraordinary circumstances where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused the plaintiff to delay in bringing suit."); *see, e.g., Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990) ("[E]quitable estoppel . . . comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.").

The Forsters allege that "[i]t was not until 2015, when the Forsters *realized* their windows might be *defective*." Compl. ¶ 87 (emphasis added). But the Forsters' emphasis on when they allege that they *discovered* the alleged *defect* is misplaced. A cause of action for strict liability (like many causes of action under New York law) accrues not upon *discovery* of an alleged *defect*, but rather upon the *occurrence* of an alleged *injury*. *See Kronos*, 612 N.E.2d at 291-92; *Victorson*, 335 N.E.2d at 276; *Seven-Up.*, 96 A.D.2d at 1052; *Coughlin*, 650 N.Y.S.2d at 480; *Crist*, 1988 WL 48681, at *2 ("The statute of limitations begins to run on the date of injury, not the date of its discovery. Thus, this cause of action, filed three years and three months after the occurrence of the act plaintiff complains of, undeniably is time-barred.") (citations omitted). And thus to entertain the Forsters' discovery-rule argument would be contrary to New York law, under which strict liability claims are not subject to the discovery rule. *See generally Cada*, 920 F.2d at 451 (explaining that efforts to "postpone the date of accrual by preventing the plaintiff from discovering that he is a victim of fraud" are "within the domain of the discovery rule").[6]

---

[6] The New York Legislature has carved out a narrow discovery rule in N.Y. C.P.L.R. § 214-c(4). But the New York Court of Appeals has made clear that section 214-c(4) is not "an independent exception to the general three-year statute of limitations." *Giordano v. Mkt. Am., Inc.*, 941 N.E.2d 727, 728, 730-31 (N.Y. 2010). Rather, "the provisions of CPLR 214–c (4) are limited to actions for injuries caused by the latent effects of exposure to a substance," referring to substances involved in "in certain toxic tort cases." *Id.* And this is not a toxic tort case.

Finally, the Forsters provide no factual allegation—particularized or otherwise—indicating that, during this alleged *2006* encounter, Defendants had any reason to believe that a defect existed in the window(s). The Forsters' vague reference to other customer complaints (Compl. ¶ 92) is not enough,[7] particularly in light of the fact that they provide *no* indication that *any* such complaints occurred *by 2006*; nor do they tell us anything particularized about their substance. Moreover, fatal to the Forsters' unsupported assertions that Defendants did not disclose the alleged defect (which does not exist) (*e.g.* Compl. ¶ 112), the New York Court of Appeals has been clear: "[I]n cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, we have held that the defendants were not estopped from pleading a statute of limitations defense." *Corsello*, 967 N.E.2d at 1184.

Therefore, the three-year statute of limitations bars the strict liability claim.

### 3. The economic loss doctrine bars the strict liability claim, which seeks alleged economic losses allegedly caused by a performance problem with the windows.

In addition to being barred by the statute of limitations, the strict liability claim is also barred by New York's well established economic loss doctrine, which applies to all cases in which a building product is alleged to have failed and damaged itself and other parts of the building. *See Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 366 (W.D.N.Y.

---

[7] Indeed, fraud claims are frequently dismissed when based on vague allegations of customer complaints, as in the following examples. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147-48 (9th Cir. 2012) ("Some courts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect, noting that complaints posted on a manufacturer's webpage merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that the manufacturer had knowledge of the defect.") (quotation omitted); *Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 WL 1743381, at *5 (N.D. Cal. Apr. 16, 2015) ("[T]here are only general allegations of undated customer complaints, engineering reports, different types of testing data, high numbers of replacement parts ordered and warranty claims. Without more, courts have determined that such allegations fail to plausibly demonstrate that the defendant knew about the defect at the time of sale because they provide no sense of chronology.") (citations omitted); *Utica Nat. Ins. Grp. v. BMW of N. Am., LLC*, 45 F. Supp. 3d 157, 162 (D. Mass. 2014) ("[T]he dates of those complaints and their relationship to this particular recall are uncertain, thereby undermining any inference that BMW must have known of the defect before the date of loss here."); *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013) ("Awareness of a few customer complaints does not establish knowledge of an alleged defect.") (quotation omitted).

2013) (collecting cases) ("New York courts have already held that, in cases involving the failure of exterior building products to perform properly, the economic loss rule bars recovery for both the direct loss of the product itself as well as the consequential damages to the underlying structure.").

New York looks to the economic loss doctrine to distinguish between alleged damages that are recoverable only in tort (when caused by a product's alleged unreasonable danger) and those recoverable only in contract (when caused by a product's alleged performance problem). *See Hemming v. Certainteed Corp.*, 468 N.Y.S.2d 789, 790 (App. Div. 4th Dept. 1983) (economic loss doctrine case law "reflects the principal that defects related to the quality of the product, e.g., product performance, go to the expectancy of the parties (loss of bargain) and are not recoverable in tort" and "relegate[s] 'economic loss' claims to the law of contracts and warranty which govern the economic relations between supplies and consumers of goods").

New York's economic loss doctrine has its origins in the Court of Appeals' opinion *Schiavone Constr. Co. v. Elgood Mayo Corp.*, 436 N.E.2d 1322, 1323 (N.Y. 1982), which reversed the Appellate Division's majority opinion and adopted the opinion of the dissent. *Butler v. Pittway Corp.*, 770 F.2d 7, 9 (2d Cir. 1985). That adopted dissent explained the following:

> [T]he product is not unduly dangerous and all that is claimed is that the equipment did not function properly thus causing the owner to incur costs of repair and consequential economic loss.
>
> We think the economic ramifications of permitting a cause of action against the manufacturer in [this] situation are so extensive and unforeseeable that it is better for the courts not to extend strict products liability to this area, leaving the owner of the product to its remedy based on its contract with the seller, and likewise leaving the seller to its remedies against the person from whom it bought the equipment based upon the contract between those parties. If there is to be so radical an extension of liability as to hold remote manufacturers liable to users, in the absence of representation or contract, for the failure of equipment to function well, it should be the Legislature that makes it after investigation of economic ramifications, which is beyond the ability of a court to do in the context of a

> particular case. There is room in the market for goods of varying quality, and if the purchaser buys goods which turn out to be below its expectations, its remedy should be against the person from whom it bought the goods, based upon the contract with that person.

*Schiavone Constr. Co. v. Elgood Mayo Corp.*, 439 N.Y.S.2d 933, 938 (App. Div. 1st Dept. 1981), *cited in Schiavone*, 436 N.E.2d at 1323 (adopting "the reasons stated in the dissenting opinion"). Since then, the Court of Appeals has elaborated, "Tort law should not be bent so far out of its traditional progressive path and discipline by allowing tort lawsuits where the claims at issue are, fundamentally and in all relevant respects, essentially contractual, product-failure controversies. Tort law is not the answer for this kind of loss of commercial bargain." *Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*, 84 N.Y.2d 685, 694, 645 N.E.2d 1195 (1995).

This economic loss doctrine bars the Forsters' strict liability claim because they based it on an alleged window leak (a performance concern) and alleged consequential water damage to the windows themselves and to the house's surrounding structure. Compl. ¶¶ 3, 197.

A leak does not make a window unreasonably dangerous.[8] An element of strict liability is "that the product was unreasonably dangerous to the consumer." *Jerry v. Borden Co.*, 358 N.Y.S.2d 426, 431 (App. Div. 2nd Dept. 1974). But a "product is not unduly dangerous [if] all that is claimed is that the [product] did not function properly thus causing the owner to incur costs of repair and consequential economic loss." *Schiavone*, 439 N.Y.S.2d at 938. Indeed,

---

[8] *See, e.g., Lake Placid Club Attached Lodges v. Elizabethtown Builders, Inc.*, 521 N.Y.S.2d 165, 167 (App. Div. 3rd Dept. 1987) ("[T]he gravamen of its claim relates to a gradual deterioration of parts of the structure primarily due to leakage and seepage damage from the elements. Plaintiff has not alleged or submitted evidence that the defects in the construction of the condominium units created a dangerous condition posing a risk of accidental injury to persons or to property other than the physical deterioration attributable solely to the failure of the products of the construction (the dwelling units) themselves."); *In re Roofing Shingle Prods.*, No. 8:11-CV-02785-JMC, 2013 WL 139520, at *6 (D.S.C. Jan. 10, 2013) (dismissing negligence claim because plaintiff made "no factual allegations that the shingles at issue are unreasonably dangerous"); *Allstate Ins. Co. v. Cavco Indus.*, No. 2 CA-CV 2007-0024, 2007 WL 5613319, at *3 (Ariz. Ct. App. Sept. 7, 2007) ("[A] water leak presented no unreasonable danger, there was no accident or 'sudden calamity or extraordinary event, just water damage from a leaky pipe,'" and "Allstate's damages were purely economic, in the form of repair costs, property damage or diminished value of the subject home.") (quotation marks omitted)); *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536 (Tex. 1996) ("The leaky roof was not itself a dangerous condition; it could only cause a dangerous condition.").

"[m]any defects, of course, do not create such a hazard," like the "defective house siding" in *Hemming*, which caused only "economic loss." *Butler*, 770 F.2d at 10 (collecting cases).

And *Hemming* is on point. There, the court reversed the denial of a motion to dismiss negligence and strict liability claims in "class actions brought by plaintiffs seeking money damages for harm allegedly caused to their homes by defective siding systems manufactured by defendants." 468 N.Y.S.2d at 790. It noted that *Schiavone* "reflects the principal that defects related to the quality of the product, e.g., product performance, go to the expectancy of the parties (loss of bargain) and are not recoverable in tort." *Id.* It also noted that case law "relegate[d] 'economic loss' claims to the law of contracts and warranty which govern the economic relations between supplies and consumers of goods." *Id.* And it held that the "negligence and strict liability claims are properly characterized as being for 'economic loss' due to product failure," as "[t]he essence of plaintiffs' claims are that the shingles, sheathing and nails ('siding systems') did not perform properly to protect their homes and, as a consequence, they have suffered direct loss to the siding itself and consequential damages to their homes." *Id.*

In *Bristol* (a trim board case), a federal New York court followed *Hemming* and other case law (*Weiss*, a siding case), and noted, "New York courts have already held that, in cases involving the failure of exterior building products to perform properly, the economic loss rule bars recovery for both the direct loss of the product itself as well as the consequential damages to the underlying structure." *Bristol*, 916 F. Supp. 2d at 366 (citing *Weiss v. Polymer Plastics Corp.*, 802 N.Y.S.2d 174, 175-76 (App. Div. 2nd Dept. 2005) ("The essence of the plaintiffs' claims are that the [synthetic stucco] did not perform properly to protect their home and, as a consequence, they have suffered direct loss to the stucco siding itself and consequential damages to the plywood substrate attached to their home in terms of water infiltration through the EIFS.

Their tort claims were therefore properly characterized as being for 'economic loss' due to product failure, and were dismissed by the Supreme Court accordingly.")); *see also Ralston Purina Co. v. Arthur G. McKee & Co.*, 551 N.Y.S.2d 720, 720-21 (App. Div. 4th Dept. 1990) (leaky-roof case in which economic loss doctrine barred strict liability claim against manufacturer because "economic loss suffered directly or indirectly by reason of a defective product are not actionable")); *Washington Apts., L.P. v. Oetiker, Inc.*, 978 N.Y.S.2d 731, 734, 736 (Sup. Ct. 2013) (faulty-plumbing-clamp case in which economic loss doctrine barred strict liability claim against manufacturer because "Plaintiff has alleged that the Clamps failed to perform their intended purpose, causing damage to the Renovated Premises"). And *Bristol* held that the doctrine barred a tort claim as to allegedly leaky trim board, reasoning, "[T]he damage claimed relates to the expectations of the parties regarding the performance of TrimBoard, thus relegating these plaintiffs to contractual remedies such as warranty." 916 F. Supp. 2d at 366.

Defendants anticipate that the Forsters will attempt to end run around the economic loss doctrine in this motion to dismiss by pointing to their allegation that the windows caused water damage to the house's surrounding structure. *See* Compl. ¶ 3 (alleging that water leaked through windows and damaged "interior wall cavity, trim, drywall, framing components, and other property").[9] But agreeing with them would be contrary to New York law as it is applied by state (*Schiavone*, *Hemming*, *Weiss*, *Ralston*, and *Washington*) and federal courts (*Butler* and *Bristol*).

---

[9] If they do attempt to make this end run, the Forsters will be employing a regularly tried (and consistently rejected) effort to plead an end run around the economic loss doctrine: making a conclusory assertion that a defect damaged "other property." Compl. ¶ 20. But federal courts are in agreement: conclusory assertions of "other property" damage are not enough. *See Martin v. LG Elecs. USA, Inc.*, No. 14-CV-83-JDP, 2015 WL 1486517, at *6 n.4 (W.D. Wis. Mar. 31, 2015) ("A conclusory assertion of damage to property is not enough."); *see, e.g., In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 22 F. Supp. 3d 1322, 1327 (N.D. Ga. 2014) ("Although they generally allege damage to 'other property,' this is too ambiguous. Indeed, this is precisely the 'formulaic recitation of the elements of a cause of action' held insufficient to survive a motion to dismiss.") (quoting *Twombly*, 550 U.S. at 555); *Naparala v. Pella Corp.*, No. 2:14-MN-00001-DCN, 2015 WL 2379492, at *4–5 (D.S.C. May 19, 2015); *Walters v. Pella Corp.*, No. 2:14-CV-00544-DCN, 2015 WL 2381335, at *9 (D.S.C. May 19, 2015).

Moreover, in the *MI Windows* MDL, the federal court (Judge Norton presiding) dismissed a strict liability claim under New York's economic loss doctrine and rejected Hildebrand's reliance on alleged damage to "other property":

> Hildebrand alleges that MIWD's defective windows have caused damage to "other property" within his home, specifically, to wood and tile floors that he installed after he moved into his home, as well as to the airspace in his home that has been contaminated by mold and mildew. *See, e.g.,* 1st Am. Compl. ¶¶ 16, 31, 37, 42. Hildebrand appears to suggest that the wood and tile floors within his home constitute "other property" because he installed those features in his home after he purchased it. However, Hildebrand's argument misses its mark. Any damage done to the floors would fall squarely within the category of consequential damages for which recovery is barred by the economic loss rule. *See Atlas Air, Inc. v. Gen. Elec. Co.,* 16 A.D.3d 444, 791 N.Y.S.2d 620, 620–21 (App.Div.2005) (recovery barred for business whose airplane was damaged by a defective airplane engine); *Weiss v. Polymer Plastics Corp.,* 21 A.D.3d 1095, 802 N.Y.S.2d 174, 175 (App.Div.2005) (recovery barred for homeowners where application of a defective synthetic stucco substance damaged both the stucco itself and the underlying plywood siding); *Amin Realty, LLC v. K & R Constr. Corp.,* 306 A.D.2d 230, 762 N.Y.S.2d 92, 93 (App.Div.2003) (recovery barred for building owner where improperly-poured concrete foundation required the removal, repair, and re-installation of the first floor of a building); *Hemming v. Certainteed Corp.,* 97 A.D.2d 976, 468 N.Y.S.2d 789 (App.Div.1983) (recovery barred for class of homeowners where defective siding systems caused damage to the siding itself and consequential damages to homes). Furthermore, the economic loss rule prevents recovery for contamination to the airspace within Hildebrand's home as the first amended complaint lacks allegations that Hildebrand has suffered personal injury from that contamination. *See Prue v. Fiber Composites, LLC,* No. 11–cv–3304, 2012 WL 1314114, at *6 (E.D.N.Y. Apr.17, 2012) ("Neither physical nor mental injury is alleged, and mere exposure to unidentified health hazards, without more, does not constitute personal injury.")

> Because the losses Hildebrand has suffered are the sort for which recovery is barred under the economic loss rule, the court dismisses [the strict liability claim].

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.* (a.k.a. *Hildebrand v. MI Windows*), No. 2:12-CV-01261-DCN, 2013 WL 1363845, at *3-4 (D.S.C. Apr. 3, 2013) (footnote omitted).

Therefore, two independently sufficient grounds exist that require dismissing the strict liability claim (Count V): the three year statute of limitations and the economic loss doctrine.

**III.    The fraud claims (Counts III-IV) are inadequately pled under Rule 9(b), as they are based on no more than the factual allegations of the breach of warranty claim.**

The fraud-based tort claims assert fraudulent misrepresentation (Count III) and fraudulent concealment (Count IV). But Rule 9(b), and other grounds, require dismissal of these claims.

> Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.
>
> . . . .
>
> A cause of action for fraudulent concealment requires, in addition to the four foregoing elements (of fraudulent misrepresentation), an allegation that the defendant had a duty to disclose material information and that it failed to do so.

*Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011) (quotations omitted).

Rule 9(b) imposes a heightened pleading standard for fraud, requiring that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading standard applies to both fraudulent misrepresentation and fraudulent concealment claims. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568–69 (7th Cir. 2012).

> While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading ordinarily requires describing the who, what, when, where, and how of the fraud.
>
> . . . .
>
> By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate.

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014) (quotations omitted); *see also Wigod*, 673 F.3d at 569 (explaining that rule 9(b) is "a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do") (quotation omitted).

### A. The fraud claims (Counts III-IV) must be dismissed because the Forsters have not pled reliance on any representation from or omission by Defendants.

"In an action to recover damages for fraud, the plaintiff must prove," among other things, "justifiable reliance of the other party on the misrepresentation or material omission." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996). But the Forsters make no attempt to plead reliance on any misrepresentation or omission by Defendants. Instead, the only reliance that they allege engaging in is that they "relied on the expertise of *the[ir] contractor*," a third party unaffiliated with Windsor, who "recommended Windsor windows because the contractor considered them good quality and had them in his own home." Compl. ¶¶ 74-77 (emphasis added). In other words, they base their fraud claims on their contractor's fraudulent misrepresentation or omission, not Defendants'.

Moreover, the Complaint contains no factual allegation indicating that, before the Forsters purchased the home in which Windsor windows were installed, they ever saw or heard a representation from Defendants. Nor does it contain any factual allegation indicating that they relied on any such representation. An allegation that a plaintiff purchased a product, without more, fails to state a plausible claim for reliance. *See Pacs Indus., Inc. v. Cutler-Hammer, Inc.*, 103 F. Supp. 2d 570, 572 (E.D.N.Y. 2000) (granting motion for judgment on the pleadings on fraud claim under New York law: "Here, the only reliance on the advertisements that Pacs can point to is its purchase of the busway, which is part and parcel of the breach of contract claim."), *followed by Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 259 (E.D.N.Y. 2014) (dismissing New York fraud claim) ("[T]he mere fact that Mr. Bertini purchased the R3 System with the R3 metal liner does not show that [] Mr. Bertini or his physician actually relied on defendant's alleged misrepresentations and omissions when deciding whether to proceed with Mr. Bertini's surgery.").

This deficiency alone requires dismissing the Forsters' fraud claims. (Counts III-IV.) *See Mandarin*, 944 N.E.2d at 1108 (reliance element of misrepresentation and omission claims); *Vermeer Owners, Inc. v. Guterman*, 585 N.E.2d 377 (N.Y. 1991) ("Nothing in this record establishes that plaintiffs in fact relied on any misrepresentation by defendants to their detriment. Thus, they have failed to establish common-law fraud and the complaint was properly dismissed."), *followed by Bertini*, 8 F. Supp. 3d at 259 (dismissing fraud claims; "Without pleading reliance, plaintiffs' fraudulent misrepresentation and omission claim cannot stand.").

**B. The fraud-by-omission claim (Count IV) must also be dismissed because the Forsters pled no plausible basis for imposing a duty to disclose on Defendant.**

The Forsters base their fraud-by-omission claim (Count IV) on Defendants' not making various disclosures. *See, e.g.*, Compl. ¶ 184. But this claim must be dismissed for two reasons: (1) they failed to plead a plausible factual basis for imposing a duty to disclose on Defendants and (2) New York's highest court has stated that this sort of expansion of a manufacturer's products liability is beyond even its authority, and is reserved for the New York Legislature.

"Although a cause of action alleging fraud may be predicated on acts of concealment, the plaintiffs must allege, inter alia, that the defendant had a duty to disclose the disputed information." *Spencer v. Green*, 842 N.Y.S.2d 445, 446-47 (App. Div. 2nd Dept. 2007). New York recognizes duties of disclosure between persons in fiduciary relationship, *see id.*, but, here, there was no fiduciary relationship between the Forsters and Defendants, who never even met. *See Dembeck v. 220 Cent. Park S., LLC*, 823 N.Y.S.2d 45, 47 (App. Div. 1st Dept. 2006) ("[P]laintiff failed to demonstrate such a relationship requiring any duty of disclosure. A fiduciary relationship does not exist between parties engaged in an arm's-length business transaction, which is normally the situation between landlord and tenant.") (citation omitted).

"It is well established that, absent a fiduciary relationship between the parties, a duty to disclose arises only under the 'special facts' doctrine where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Jana L. v. W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 134 (App. Div. 2nd Dept. 2005) (quotations omitted). And that doctrine must be balanced against an even more well established rule: "a plaintiff fails to state a claim for fraud . . . when the fraud claim 'is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement.'" *Alredo Prods., Inc. v. Sandra Carter Prods., Inc.*, No. 03 CV 0790 CSH/THK, 2006 WL 453248, at *7 (S.D.N.Y. Feb. 22, 2006) (collecting cases) (quoting *Hynes v. Griebel,* 754 N.Y.S.2d 293, 295 (App. Div. 2nd Dep't 2002); *see In re Enron Corp.*, No. 04 CIV. 1367 (NRB), 2005 WL 356985, at *8 (S.D.N.Y. Feb. 15, 2005) ("It is a basic principal of New York law that '[a] cause of action to recover damages for fraud will not lie where the only fraud alleged relates to a breach of contract.'") (quoting *Morgan v. A.O. Smith Corp.,* 697 N.Y.S.2d 152, 152 (App. Div. 2nd Dep't 1999)). New York vigilantly polices this line between contract and fraud claims, and refuses to permit it to be crossed by creative pleading.[10]

---

[10] That vigilance is demonstrated by a long history of case law in which New York courts have dismissed fraud claims that are simply breach of contract claims, dressed up in the conclusory language of fraud. For example, the Second Circuit has ruled:

> [U]nder New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract. In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim. TIA's fraudulent inducement claim therefore also fails because it is simply a breach of contract claim in the tort clothing of (factually unsupported) allegations of an intent to breach.

*Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (quotations and citations omitted). And other examples are easy to find. *See, e.g.*, *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) ("[T]he use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages."); *Non-Linear Trading Co. v. Braddis Assocs., Inc.*, 675 N.Y.S.2d 5, 13 (App. Div. 1st Dept. 1998) ("[P]laintiff's claim of fraud in the inducement does no more than restate its action for breach of performance using different terminology.").

New York case law allows only one conclusion here: the Forsters' fraud-by-omission claim falls on the contract side of that line, not the fraud side. In New York, the fraud side is reserved for representations as to unreasonably dangerous products. *See, e.g.*, *City of New York v. Lead Indus. Ass'n, Inc.*, 597 N.Y.S.2d 698, 700 (App. Div. 1st Dept. 1993) ("Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, gives rise to a separate cause of action for fraud."). For example, in *Maytag*— which involved a defect that caused Maytag's ovens to explode—the court concluded that Maytag had a "duty to disclose [the defect that was] distinct from a contractual duty because 'it is a principle of long standing that 'one who sells an article knowing it to be dangerous by reason of concealed defects is guilty of a wrong, without regard to the contract.'" *Woods v. Maytag Co.*, No. 10-CV-0559 ADS WDW, 2010 WL 4314313, at *1, 10 (E.D.N.Y. Nov. 2, 2010) (quoting *Young v. RobertShaw Controls Co.*, 481 N.Y.S.2d 891, 894 (App. Div. 3rd Dep't 1984)).

But the Forsters have not alleged that the windows explode; they have alleged that the windows leak, and that this leak is so gradual and subtle that, for them, it went unnoticed for almost a decade. *See* Compl. ¶¶ 83-87. In other words, "defendants are alleged . . . simply to have marketed a product that failed." *Lead*, 597 N.Y.S.2d at 700. And New York law is clear: claims based on alleged "defects related to the quality of the product, e.g., product performance,

---

Indeed, as one court has colorfully stated, "allegations that contractual warranties and representations were fraudulent do not magically transform a contract dispute into a fraud action." *GS Equities, Ltd. v. Blair Ryan Co.*, No. 08 CIV.1581 CM, 2011 WL 3278909, at *6 (S.D.N.Y. July 26, 2011) (plaintiffs attempt to "dress up its already-adjudicated breach of contract claim in another costume—the costume of fraud—which the law does not permit"); *see Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 CIV. 7426 RWS, 2012 WL 3065929, at *9 (S.D.N.Y. July 25, 2012) ("Under New York law, a re-styling of contract claims does not create an independent claim for fraud and New York courts have dismissed such claims as duplicative."); *Metzler v. Harris Corp.*, No. 00 CIV 5847 HB, 2001 WL 194911, at *3 (S.D.N.Y. Feb. 26, 2001) ("[P]laintiff's fraud claim is merely a disguised contract claim as the gravamen of the fraud claim is that defendant promised to pay him commissions and failed to do so. Therefore, this claim must be dismissed"), *quoted in Rosenblatt v. Christie, Manson & Woods Ltd.*, No. 04 CIV. 4205 (PKC), 2005 WL 2649027, at *11 (S.D.N.Y. Oct. 14, 2005), *aff'd sub nom.*, 195 F. App'x 11 (2d Cir. 2006); *see also Miramax Film Corp. v. Abraham*, No. 01 CV 5202 (GBD), 2003 WL 22832384, at *12 (S.D.N.Y. Nov. 25, 2003) ("[A]lleging post-contract misrepresentations pertaining to defendants' concealment of its breach of contract is insufficient to transform an otherwise garden variety contract claim into a claim sounding in fraud.").

go to the expectancy of the parties (loss of bargain)" and are "relegate[d] . . . to the law of contracts and warranty which govern the economic relations between supplies and consumers of goods." *Hemming*, 468 N.Y.S.2d at 790; *see also Bocre Leasing.*, 84 N.Y.2d at 694 (refusing to allow[] tort lawsuits where the claims at issue are . . . product-failure controversies").

For that reason, fraud claims based on a warranty alone—like the Forsters'[11]—must be dismissed. *See Morgan*, 697 N.Y.S.2d at 152 ("The Supreme Court correctly dismissed the plaintiffs' cause of action to recover damages for fraud since the facts alleged in support of that cause of action were duplicative of the facts alleged in support of the time-barred causes of action to recover damages for breach of warranty"); *J.E. Morgan Knitting Mills, Inc. v. Reeves Bros.*, 663 N.Y.S.2d 211, 211 (App. Div. 1st Dept. 1997) ("Plaintiffs' cause of action for fraud, which alleges that defendants knew at the time of contract execution that their warranty therein against undisclosed liabilities burdening the property was false, was properly dismissed as duplicative of plaintiffs' cause of action for breach of contract."); *Kriegel v. Donelli*, No. 11 CIV. 9160 ER, 2014 WL 2936000, at *13-14 &n.14 (S.D.N.Y. June 30, 2014) (collecting cases) ("From Plaintiff's view, the *exact* representations made by Defendant in the warranty in Section 10(c) also fraudulently induced Plaintiff's entry into the contract; therefore, his claim is wholly duplicative.") (citing *Torchlight*, 2012 WL 3065929, at *9 (dismissing fraud claim that "recite[d] the purported breaches of [written] representations and warranties")); *WestCom Corp. v. GTE Telecom Inc.*, No. 01 CIV. 2352 (RO), 2001 WL 1568814, at *1 (S.D.N.Y. Dec. 10, 2001) ("WestCom's fraud claim relies on allegations that are not collateral to the contract, as the alleged breach is based on an alleged misrepresentation of the warranty quoted above. Thus,

---

[11] *Compare, e.g.*, Counts I-II of Compl. ¶¶ 125-26, 160, 162 (alleging that Defendants breached its warranty by representing that windows would be "'free from defects in materials and workmanship which significantly impair their operation and proper usage'" when the windows were allegedly defective), *with* Counts III-IV of Compl. at ¶¶ 170-71, 183-84 (alleging that Defendants "falsely represented . . . that the Windows were warranted against defects in material and workmanship" when the windows were allegedly defective).

WestCom's fraud claim is duplicative of the breach of warranty claim and not collateral to the contract, and must be dismissed with prejudice."); *Four Finger Art Factory, Inc. v. Dinicola*, No. 99 CIV. 1259 (JGK), 2000 WL 145466, at *5 (S.D.N.Y. Feb. 9, 2000) ("The allegation as to the false warranty is therefore plainly not collateral and it does not support a claim for fraud."); *Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F. Supp. 1012, 1016 (E.D.N.Y. 1996) ("Because the fraud claim involves Coville's alleged breach of a warranty of merchantability, and does not 'concern representations which are collateral or extraneous to the terms of the parties' agreement,' plaintiff's Fourth Cause of Action fails to state a claim and must be dismissed."), *aff'd,* 125 F.3d 845 (2d Cir. 1997); *Bd. of Managers of Crest Condo. v. City View Gardens Phase II, LLC*, 35 Misc. 3d 1223(A), 951 N.Y.S.2d 85 (Sup. Ct. 2012) ("Plaintiff's cause of action for fraud, based upon misrepresentations as to whether the work would be adequately performed, must be dismissed because it is duplicative of the first cause of action for breach of contract."); *Kikirov v. 355 Realty Assocs., LLC*, 31 Misc. 3d 1212(A), 927 N.Y.S.2d 816 (Sup. Ct. 2011) ("Insofar as plaintiff's fourth cause of action for fraud is based upon misrepresentations as to whether the work performed would be adequately performed, it must be dismissed because it is duplicative of his first cause of action for breach of contract. . . . Such misrepresentations are not collateral to the contract because they pertain to the exact allegations found in plaintiff's breach of contract claim, namely, that the work performed was substandard . . . ."); *Nat'l Stone Warehouse Inc. v. AKG Yahtim Ve Insaat Malzemeiri Sanayi ve Ticaret*, 20 Misc. 3d 1143(A), 872 N.Y.S.2d 692 (Sup. Ct. 2008) (dismissing fraud claim; "Stone Trading merely alleges that Cimstone misrepresented its ability to perform under the agreement and that Cimstone misrepresented its ability to, and its intention to cure the alleged defects in the stone products.").

The Forsters' complaint must likewise be dismissed because they simply allege that their windows leak and that Windsor did not tell them that the windows would leak. *Cf. Kennedy v. MI Windows & Doors, Inc.*, No. 2:12-CV-2305-DCN, 2013 WL 267853, at *4 (D.S.C. Jan. 24, 2013) (applying Illinois law) (dismissing nondisclosure-based fraud claims against window manufacturer based on absence of factual basis for imposing duty to disclose). And for this Court impose a duty to disclose on Windsor under the circumstances would not simply be contrary to Rules 8, 9(b), and New York law. It would also be contrary to the position of New York's highest court that imposing any further products liability on manufacturers beyond strict liability is a matter of public policy beyond even its authority, and which rather is reserved for the New York Legislature alone. *See Schiavone Constr.*, 439 N.Y.S.2d at 938, *adopted by Schiavone Constr.*, 451 N.Y.S.2d at 721 ("If there is to be so radical an extension of liability as to hold remote manufacturers liable to users, in the absence of representation or contract, for the failure of equipment to function well, it should be the Legislature that makes it after investigation of economic ramifications, which is beyond the ability of a court to do in the context of a particular case."); *see also Jaramillo v. Weyerhaeuser Co.*, 906 N.E.2d 387, 391 (N.Y. 2009) (noting that "'[i]mposition of this onerous [strict liability] liability rest[ed] largely on considerations of public policy'") (quoting *Sukljian v. Charles Ross & Son Co.*, 503 N.E.2d 1358, 1360 (N.Y. 1986)).

Therefore, the fraud claims (Counts III-IV) must be dismissed.

## IV. The warranty claims (Counts I-II) must be dismissed because the Forsters did not rely on the warranty or give Defendants an opportunity to comply with it.

### A. The Forsters' failure to plead reliance on the warranty requires dismissal.

The Forsters do not allege that they relied on Defendants' express warranty; rather, they relied "on the expertise of the[ir] contractor," who "recommended Windsor windows because *the contractor* considered them good quality and had them in his own house." Compl. ¶¶ 75-76

(emphasis added). This is fatal to their claims.  In the *MI Windows* MDL, Judge Norton applied

New York law to dismiss an express warranty claim that lacked alleged reliance:

> In order to maintain an express warranty claim under New York law, a plaintiff "must prove that the statement falls within the definition of a warranty, that she relied on it, and that it became part of the basis for the bargain." *Kraft v. Staten Island Boat Sales, Inc.,* 715 F.Supp.2d 464, 473 (S.D.N.Y.2010); *see also Fagan v. AmericsourceBergen Corp.,* 356 F.Supp.2d 198, 217 (E.D.N.Y.2004); N.Y. U.C.C. § 2–313(1) (McKinney 2013). "The 'basis of the bargain' element requires a plaintiff to show that he or she relied on the seller's representations when deciding whether to purchase the goods." *Fagan,* 356 F.Supp.2d at 217.
>
> The first amended complaint states that "MIWD expressly warranted that the Windows are 'fully warranted against defects in workmanship and materials under normal use and service.'" 1st Am. Compl. ¶ 91. MIWD's alleged statement certainly falls within the definition of a warranty. However, Hildebrand has not pleaded that he relied on this statement when purchasing his home. In fact, he appears to concede that he had not seen MIWD's warranty statement before purchasing his home. Without pleading that he relied on MIWD's statement, Hildebrand cannot show that any of MIWD's warranty statements formed the basis of the bargain he made for his home.

*In re MI Windows*, No. 2:12-CV-01261-DCN, 2013 WL 1363845, at *4-5.

Because the Forsters allege that they relied not on the warranty but rather on their

contractor's statements about his positive experience with Windsor windows, the express

warranty claims (Counts I-II) must be dismissed.

**B.  The Forsters' failure to provide Defendants notice requires dismissal.**

Equally fatal to this claim is the Forsters' failure to plausibly allege a breach of the

warranty, because they never provided Defendants an opportunity to comply with the warranty.

Windsor's warranty (like many warranties) was not a promise that no defects existed or

would ever arise, but "an acknowledgement that there might be" defects, and a promise to

remedy them under the terms of the warranty. *Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005

WL 2406145, at *3 (W.D. Wis. Sept. 28, 2005) (Shabaz, J.) Under the warranty's terms, a

homeowner can recover under the warranty only if she provided Windsor or a distributor notice

of the alleged defect "no later than 30 days after the defect is discovered or should have been discovered." Deck. of Rick McMillen, May. 26, 2016, Exhibit A. And, as a matter of law and common sense, Windsor could not breach the warranty without first receiving notice of the alleged defect that needed fixing. *See In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 8-11-MN-02000-JMC, 2013 WL 3337833, at *6 (D.S.C. July 2, 2013) ("If no notice had been given, the court reasoned, then Defendant could not have ignored it and, thus, could not have breached the warranty."), *denying reconsideration of In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 8:12-CV-00087-JMC, 2013 WL 1194851, at *3 (D.S.C. Mar. 22, 2013) ("First Baptist's Complaint does not allege that First Baptist ever gave GAF notice of any alleged defect when it was discovered, or that GAF ever refused or failed to honor any express warranty it provided at the time of purchase. Accordingly, to the extent First Baptist attempts to allege a cause of action for breach of express warranty, it has failed to do so.") (citation omitted).

And, according to the Complaint, Windsor never received such notice. The last communication the Forsters had with Windsor occurred in 2006, a decade ago. Compl. ¶¶ 83-84. At that time, alleged leaking was fixed by the Forsters' contractor. *Id.* They candidly allege that the next time they concluded they had a problem (in 2015), they did *not* give Windsor notice.

> 87. It was not until 2015, when the Forsters realized their windows might be defective when they began to notice what appeared to be seal failures causing secondary problems such as fogging at numerous other windows.
>
> . . . .
>
> 91. As a result of Defendants' previous representations that the Windows were not defective and leaking, the Forsters did not put Defendants on notice that that they became aware that all of their windows were defective, but instead filed the instant action.

*Id.* ¶¶ 87, 91.

None of these allegations alleges a breach of Defendants' warranty.

Because he Forsters never alleged the facts of a breach, Counts I-II must be dismissed.

### C. The warranty's five year limitations period bars Counts I-II.

The applicable warranty period[12] is "for a period of **5 YEARS** from the date of manufacture." Decl. of Rick McMillen, May 26, 2016, Exhibit A. The Forsters' windows were manufactured by 2001, when they were installed in the Forsters' home. Compl. ¶ 74. This lawsuit is based on Windsor's alleged failure to fix a leak about which it did not know, which was discovered by the Forsters in 2015 – nine years after the warranty expired.

Counts I and II are barred by the five year limitations period in the warranty.

### D. The applicable statute of limitations bars Counts I-II.

New York law imposes a six year statute of limitations on contract claims. N.Y. C.L. § 213(2).

Breach of contract actions "generally accrue[] at the time of the breach." *Hahn Automotive Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190 (N.Y. 2012). The latest opportunity that Windsor had to breach (or comply with) the warranty was 2004, when it did comply with the warranty, Compl. at ¶¶ 81-82; even if a contract claim accrued then, it expired six years later in 2010. Windsor had no opportunity to breach (or comply with) the warranty in 2006, because the Forsters' contractor performed any necessary repairs before Windsor's inspection, *id.* ¶¶ 83-84; even if a contract claim accrued then, it expired in 2012. And, for the reasons already argued, the Forsters have not plausibly pled equitable estoppel, and they have certainly not pled the necessary particularized basis for it. *See, supra*, Sec. II.A.2.

---

[12] Defendants note that the two-page limited warranty is titled, "Pinnacle Limited 20 YEAR Warranty." But it has different warranty lengths set forth for different parts of the window. The 20-year warranty applies only to "INSULATED GLASS", which the Forsters do not allege is defective. The 5-year warranty applies to "ALL OTHER COMPONENTS," which seems to be the best fit for any components implicated by the Forsters' vaguely alleged defect.

There is, of course, the Forsters' alleged 2015 discovery of window "fogging." Compl. at ¶ 87. But even if this changed their assessment of whether their windows had a defect, the warranty, the law, and common sense required them to contact Windsor to give it an opportunity to remedy the problem being suing Windsor under the warranty; without such notice, Windsor had no opportunity to breach (or comply with) the warranty.

Counts I and II are time barred.

## **CONCLUSION**

For all of these reasons, Defendants respectfully ask this Court to dismiss all claims in the Forsters' Complaint (Counts I-V).

Dated this 31st day of May, 2016

**MICHAEL BEST & FRIEDRICH LLP**

By:  *s/Joseph L. Olson*
     Paul E. Benson, SBN 1001457
     Joseph L. Olson, SBN 1046162
     100 East Wisconsin Avenue, Suite 3300
     Milwaukee, WI  53202-4108
     P:  414.271.6560
     F:  414.277.0656
     pebenson@michaelbest.com
     jlolson@michaelbest.com

**ARTHUR, CHAPMAN, KETTERING,
SMETAK & PIKALA, P.A.**
     Michael P. North (MN #230716)
     Sarah E. Bushnell (MN #326859)
     Jeffrey M. Markowitz (MN #391959)
     500 Young Quinlan Building
     81 South Ninth Street
     Minneapolis, MN 55402-3214
     P: (612) 339-3500
     F: (612) 339-7655
     mpnorth@ArthurChapman.com
     sebushnell@ArthurChapman.com
     jmmarkowitz@ArthurChapman.com

*Attorneys for Defendants*
*Windsor Window Company d/b/a Windsor*
*Windows and Doors, and Woodgrain*
*Millwork, Inc.*

209265-0003\19140271.1